RANDOLPH, Circuit Judge,
concurring:
* * *
The United States or its officers may be sued only if there is a waiver of sovereign immunity. See, e.g., Dep’t of Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999). We have held that the Alien Tort Act, whatever its meaning, does not itself waive sovereign immunity. Industria Panificadora, S.A v. United States, 957 F.2d 886, 886 (D.C.Cir.1992) (per curiam); Sanchez-Espinoza v. Reagan, 770 F.2d 202, 207 (D.C.Cir.1985); see Canadian Transport Co. v. United States, 663 F.2d 1081, 1092 (D.C.Cir.1980). The detainees therefore rely on the waiver provision in the Administrative Procedure Act, 5 U.S.C. § 702, which states: “An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity ... shall not be dismissed ... on the ground that it is against the United States....”
Although relying on the APA’s waiver for agencies, the detainees do not identify which “agency” of the United States they have in mind. They have sued the President in each case, but the President is not an “agency” under the APA and the waiver of sovereign immunity thus does not apply to him. See Franklin v. Massachusetts, 505 U.S. 788, 800-01, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); Armstrong v. Bush, 924 F.2d 282, 289 (D.C.Cir.1991). This leaves the military. The APA specifically excludes from its definition of “agency” certain functions, among which is “mil *397 itary authority exercised in the field in time of war or in occupied territory.” 5 U.S.C. §§ 551(1)(G), 701(b)(1)(G); see id. §§ 553(a)(1) & 554(a)(4), exempting military “functions” from the APA’s requirements for rulemaking and adjudication; United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 375 n. 2 (2d Cir.1968) (Friendly, J.). The district court ruled, in an alternative holding, that because of the military function exclusion, the APA does not waive sovereign immunity. Rasul v. Bush, 215 F.Supp.2d 55, 64 n. 10 (D.D.C.2002). I believe this is correct.
Each of the detainees, according to them pleadings, was taken into custody by American armed forces “in the field in time of war.” I believe they remain in custody “in the field in time of war.” It is of no moment that they are now thousands of miles from Afghanistan. Their detention is for a purpose relating to ongoing military operations and they are being held at a military base outside the sovereign territory of the United States. The historical meaning of “in the field” was not restricted to the field of battle. It applied as well to “organized camps stationed in remote places where civil courts did not exist,” Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 274, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960) (Whittaker, J., joined by Stewart, J., concurring in part and dissenting in part). To allow judicial inquiry into military decisions after those captured have been moved to a “safe” location would interfere with military functions in a manner the APA’s exclusion meant to forbid. We acknowledged as much in Doe v. Sullivan, 938 F.2d 1370, 1380 (D.C.Cir.1991), when then-Judge Ruth Bader Ginsburg stated for the court that the APA’s military function exclusion applied to cases in which a court was asked to “review military commands made ... in the aftermath of [ ] battle.” It is also of no moment that the detainees were captured without Congress having declared war against any foreign state. “Time of war,” as the APA uses it, is not so confined. The military actions ordered by the President, with the approval of Congress, are continuing; those military actions are part of the war against the al Qaeda terrorist network; and those actions constitute “war,” not necessarily as the Constitution uses the word, but as the APA uses it. See Campbell v. Clinton, 203 F.3d 19, 29-30 (D.C.Cir.2000) (Randolph, J., concurring in the judgment); Mitchell v. Laird, 488 F.2d 611, 613 (D.C.Cir.1973). The detainees are right not to contest this point. To hold that it is not “war” in the APA sense when the United States commits its armed forces into combat without a formal congressional declaration of war would potentially thrust the judiciary into reviewing military decision-making in places and times the APA excluded from its coverage. * * *
Al Odah v. United States, 321 F.3d 1134, 1149-50 (D.C.Cir.2003) (Randolph, J., concurring).